UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTIAN LLOYD GOINS,

Defendant.

No. 6:21-CR-45-REW-HAI

RECOMMENDED DISPOSITION

*** *** *** ***

On referral from District Judge Wier, the Court considers reported violations of supervised release conditions by Defendant Christian Lloyd Goins.

**I.**

District Judge Thomas Varlan of the Eastern District of Tennessee entered Judgment against Defendant in September 2015 after Defendant pleaded guilty to one count of being a felon in possession of a firearm. D.E. 1-3. Consistent with the binding plea agreement, Defendant was sentenced to a below-Guidelines 72 months of imprisonment followed by three years of supervised release. *Id*. at 2-3. Defendant was released on July 13, 2021. On August 5, 2021, jurisdiction was transferred to this Court.

On November 1, 2022, the United States Probation Office ("USPO") informed the Court that Defendant had violated the conditions prohibiting unauthorized controlled-substance use and commission of a crime. D.E. 5. According to that report,

> On October 17, 2022, the undersigned made contact with Goins at his home. Goins provided a urine sample which tested positive for the use of methamphetamine. Goins denied using methamphetamine and the sample was packaged in his presence to be sent to the national laboratory for confirmation.

> On October 28, 2022, Goins contacted the undersigned by telephone and advised he had used methamphetamine prior to the urine sample provided on October 17, 2022. Goins was instructed to report to the probation office on October 31, 2022.
>
> On October 31, 2022, Goins reported to the probation office and provided an additional urine sample which tested positive only for the use of tramadol, for which he has a valid prescription. Goins also signed a written admission for using methamphetamine on October 14, 2022.
>
> Prior to the violations described above, the defendant had been in compliance with his conditions of release. Goins has has been enrolled in outpatient substance abuse treatment since August 1, 2021. He is currently employed and is always respectful and cooperative with the undersigned.

D.E. 5-1. Because Defendant had been otherwise compliant and had admitted his meth use, the probation officer requested he be referred to inpatient drug abuse treatment in lieu of revocation proceedings. *Id*. at 2. On November 4, District Judge Wier granted that request and added a note to warn Defendant that revocation proceedings would occur on any future noncompliance. *Id*.

On November 10, 2022, Defendant enrolled in Hickory Hills Recovery Center for inpatient substance-abuse treatment.

**II.**

On November 28, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a Grade C violation of the condition that requires participation in a drug abuse treatment program as directed by the probation officer. According to the Report, on November 27, Defendant left Hickory Hills "on his own accord prior to completing the treatment program." An accompanying Discharge Summary states that Defendant had "became upset when HHRC staff placed all clients on property restriction, stating he would not be able to see his family."

On January 9, 2023, the USPO issued an Addendum to the Report, which includes two additional violation allegations. According to the Addendum,

> On January 5, 2023, Goins was arrested on a warrant issued due to previously reported violations. On January 6, 2023, this officer made contact with Goins at the Laurel County Detention Center where he admitted to having used methamphetamine and marijuana multiple times weekly and as recent as January 5, 2023. He signed a written admission for the use of these substances.

Based on this admission, Violation #2 charges a Grade C violation of two conditions that concern unlawful controlled-substance use and possession.

Drawing on the same conduct, Violation #3 charges a violation of the condition prohibiting commission of another federal, state, or local. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #3 is a Grade B violation because Defendant's use and possession of marijuana and methamphetamine, on account of his prior drug conviction, constitute a Class E felony under 21 U.S.C. § 844(a).

On January 9, 2023, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 9. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant argued for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on January 20, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 11. Defendant competently entered a knowing, voluntary, and intelligent stipulation all three Violations. For purposes of Rule 32.1 proceedings, Defendant admitted he had left treatment against his probation officer's instructions and used

methamphetamine and marijuana. The government thus established all three Violations under the standard of section 3583(e).

**III.**

The Court has evaluated the entire record, the Report and Addendum and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to being a felon in possession of a firearm, a Class C felony. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(8). A Class C conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #2 and a Grade B violation for Violation #3. Given Defendant's criminal history category of V (the category at the time of the conviction) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 18 to 24 months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C.

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

§ 3583(b) & (h). Under 18 U.S.C. § 3583(h), the authorized reimposition of a term of supervised release is not more than three years, less any term of imprisonment imposed upon revocation.

**IV.**

At the final hearing, the government argued for a revocation sentence of eighteen months' incarceration, followed by twelve months of supervised release (to begin with 90 days of inpatient drug-abuse treatment). The defense asked for twelve months and a day of imprisonment, followed by eighteen months of supervision (to begin with 90 days of inpatient drug-abuse treatment).

According to the government, Defendant did well on supervision for a year, but then "fell off" in November. The government argued that revocation would be mandatory for the Grade B violation conduct, and that treatment in lieu of revocation would not adequately address the violations. Defendant needs treatment, but the government believes he does not appear ready yet to do the hard work to become drug-free. The government suggested a low-Guidelines sentence is appropriate because this was Defendant's first revocation and he admitted his drug use. According to the government, Defendant's criminal history was not overly concerning. It consists mostly of property crimes, which is a "hallmark" of a drug-addiction problem.

According to the defense, Defendant's recent problems resulted from becoming overwhelmed in his personal life. He had taken on many responsibilities at once and got burned out. Defendant got married in August 2021 to a supportive woman with three teenage daughters. Defendant has been in barber school and has been working third shift. Defendant's drug problem has not evaporated, and once he became overloaded he made a "poor choice" in October. The drug-treatment program was "not ideal" because it was "triggering" to Defendant to be around other addicts. Defendant called Officer Armstrong to discuss his struggles in

treatment, but he admits he made a mistake in leaving without permission. Defendant slipped into a spiral of desperation that lasted until his arrest.

According to the defense, Defendant has "more going for him" now than before with his new family and barber school. And he had done well on supervision for a year.

Both parties requested 90-day inpatient treatment upon release. The defense indicated Defendant also has mental health issues that are not recorded in his PSR. The defense also asked that Defendant be placed in a facility closest to his home.

Defendant addressed the Court. He acknowledged he needs help. He says he is different now because he has ambitions and goals that he wants to achieve. During his latest period of release, he had done some good in the world and is ready to live a more fulfilling life. He still carried the grief of the loss of both his parents while he was incarcerated. He had become married for the first time. His wife has medical issues and has three teen daughters from two different fathers. Defendant is in school. Under all this pressure, he became weak and made decisions he regrets. Defendant argues he is finally becoming a responsible adult and is determined to put his past behind him. He has matured and has become proud of the changes he has made.

**V.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The

only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither party argued that this exception applies. Indeed, Defendant was in drug treatment when the violations began.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends a below-Guidelines sentence of fourteen months' incarceration, followed by eighteen months on supervision. The undersigned also recommends 90 days of inpatient treatment upon release and the addition of a special condition for mental health treatment.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant was seen in possession of a shotgun that had been stolen. Because no firearms are involved in the revocation conduct, there is no clear link to the underlying offense.

The Court next considers Defendant's history and characteristics. Defendant's prior convictions have given him many opportunities to learn that he needs to follow the law and comply with conditions. The no-action violation in November served a further warning. Yet, he returned to drug use and left treatment. In addition to the Court's leniency in November 2022, Defendant received leniency at sentencing through his below-Guidelines negotiated binding sentence. What is new in his history is the strides he has made on his current supervision term.

Defendant has worked, started a family, and started schooling for a new career. The Court credits his report that he is a more responsible person with goals he hopes to achieve.

The Court also considers the need to deter criminal conduct and protect the public. This factor weighs heavily in light of Defendant's history of property crimes. He has a history of victimizing people, which undoubtedly has affected his community. The Court acknowledges that if he remains devoted to his family and his schooling, and is successful in treatment, he will pose less of a risk to the people around him.

Another factor focuses on opportunities for education and treatment. Defendant was receiving drug-abuse treatment but left the program. Everyone, including Defendant, agrees additional drug-abuse treatment is warranted. Both sides recommended a 90-day inpatient program upon release.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach here is significant in that he returned to drug use (which drove his criminal history), even after being shown leniency in November when no revocation was sought.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of 14 months. This is below the Guidelines Range

of eighteen to 24 months. When varying from the Range, the Court must provide an adequate explanation and '"consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state '"the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors. The Court finds that the sentence need not be overly punitive because of the strides Defendant has made in his personal life. Defendant's statement to the Court was persuasive and revealed a broken man seemingly intent on changing his ways. As he acknowledges, he became overwhelmed and made mistakes. But he performed well on supervision for a year. He started a family that includes three teenage daughters. He was working and attending school. He has created goals for himself and is determined to put his past behind him. With these motivators in place, and with further drug-abuse and mental-health treatment, Defendant can become a model citizen. Although revocation is warranted, an overly harsh penalty is not. The Court cannot go lower because the trust breach was significant—Defendant was shown mercy when revocation proceedings were not commenced after his drug use in November. Further, Defendant has a long history of criminal conduct, including while on supervision. The need to deter criminal conduct and protect the public thus also weighs against a lesser sentence.

The Court encourages Defendant to keep his goals in front of him, to cling tightly to his new vision of himself, and to channel his determination into things that improve his life.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all three Violations.

2. Revocation with a term of imprisonment of fourteen months, followed by eighteen months of supervised release, the first three months of which should be in inpatient substance abuse treatment.

3. Addition of a special condition requiring participation in mental health treatment as directed by the Probation Officer.

4. That, if possible, Defendant be housed in the facility closest to his home.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the final hearing, within **SEVEN days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 23rd day of January, 2023.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**
***Hanly A. Ingram*** HAI
**United States Magistrate Judge**